**Marie Weast CLAUS, by her next friend Kenneth CLAUS, Alice Curry, Dorothy Howell, and Veronica Marie Wingfield, by her next friend Darlene E. Wingfield, individually and on behalf of a class of persons in the State of Indiana similarly situated, Plaintiffs,**

v.

**Robert GOSHERT**[1]**, as Administrator of the Indiana Department of Public Welfare; David Ling, Director of the Department of Public Welfare of Tippecanoe County, Defendants.**

No. L 81–48.

United States District Court,
N.D. Indiana,
Hammond Division at Lafayette.

March 25, 1987.

---

1. The name of Robert Goshert has been substituted as the current administrator, the action having been initiated during Robert Smith's administration.

Ivan Bodensteiner, Valparaiso Law School, Valparaiso, Ind., Greta Stirling Friedman, Katherine A. Martin, Wendell Walsh, Legal Services Program, South Bend, Ind., for plaintiffs.

Gordon E. White, Jr., Deputy Atty. Gen., Indianapolis, Ind., H. Hanley Hammel, Lafayette, Ind., for defendants.

### MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This matter is before the court on the plaintiffs' Motion for an Order Awarding Attorney Fees. Plaintiffs initially filed their complaint on July 29, 1981, stating an action for declaratory and injunctive relief, brought on behalf of a class of individuals in Indiana who are eligible for Medicaid. The purpose of the action was to enjoin implementation of Public Law 141 of the 1981 Regular Session of the Indiana General Assembly, which required Medicaid recipients to make copayments for all non-federally mandated medical assistance services provided under I.C. § 12–1–7–14.9. The plaintiffs alleged that the attempt to implement Public Law 141 constituted a violation of the Indiana Administrative Adjudication Act, I.C. §§ 4–22–2–1 *et seq.*, and further violated due process rights secured by the Fourteenth Amendment, and federal regulations promulgated pursuant to Subchapter XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.*

Additionally, the plaintiffs complained that the defendants had violated federal law in failing to protect the personal needs allowance of a sub-class of Medicaid-eligible individuals receiving care in skilled nursing facilities and intermediate care facilities. Finally, the plaintiffs stated that the defendants' proposed rule revision failed to provide proper notification and hearing, imposed copayments on intermediate care facility residents in violation of federal regulations and state law, and failed to exempt certain mandatory Medicaid services from copayments as required by federal law. The plaintiffs cited authorization for their causes of action as 42 U.S.C. § 1983 and § 1396, and 28 U.S.C. Sections 2201 and 2202.

On August 7, 1981, the court granted the plaintiffs' motion for a preliminary injunction, prohibiting the implementation and enforcement of Acts 1981, Public Law 141 of the State of Indiana, until further order of the court. The order focused primarily on procedural matters and requested that defendants notify the court if errors were corrected and the question became moot. See *Claus v. Smith*, 519 F.Supp. 829 (N.D. Ind.1981).

On November 6, 1981, the defendants sought court approval of a revised plan, to which the plaintiffs objected. Having heard arguments on January 21, 1982, the court took the matter under advisement, with both sides submitting written memoranda. Defendants argued that the plaintiffs were attempting to raise substantive issues not addressed in the complaint, whereupon, by leave of court, the plaintiffs amended the pleadings for the second time. Defendants filed a motion to reconsider which the court denied. On June 1, 1982, the defendants answered the amended complaint and a pretrial conference was held on December 27, 1982. On February 7, 1983, the plaintiffs filed a motion for summary judgment, seeking an entry of judgment that would:

(1) [Certify] this cause as a class action on behalf of all individuals in the state of Indiana who are now or may in the future be eligible for Medicaid.

(2) [Declare] Defendants' actions before the preliminary injunction, to implement and enforce copayments without providing timely and adequate notice to all members of the Plaintiff class, to be violative of 42 C.F.R. §§ 431.205, 431.210, 431.220, and 447.205, I.C. § 4–22–2–4, and due process.

(3) [Declare] that Defendants' final rule [failed] to meet the requirements of 42 U.S.C. § 1396*o* (c) that no Medicaid provider may deny medical care or services to a Medicaid recipient on account of such individual's inability to pay a copayment.

(4) [Declare] that Defendants' final rule [imposed] copayments upon residents of intermediate care facilities in violation of 42 U.S.C. § 1396*o* (a)(2)(C) and 42 C.F.R. §§ 435.725(c)(1) and (4).

(5) [Declare] that Defendants' final rule [imposed] copayments upon pregnant women in violation of 42 U.S.C. § 1396*o* (a)(2)(B) and health maintenance organization enrollees in violation of 42 U.S.C. § 1396*o* (a)(2)(D).

(6) [Declare] that Defendants' final rule [failed] to provide Medicaid recipients the hearing rights to which they are entitled pursuant to 42 C.F.R. § 431.220(a)(2) and due process.

(7) [Declare] that Defendants' final rule [conditioned] the hearing rights of Medicaid recipients upon their filing a request for reconsideration to the county welfare department, without providing those requirements of the hearing system mandated by 42 C.F.R. §§ 431.205, 431.232, 431.233, and 431.242 and due process.

(8) [Declare] that Defendants' final rule [failed] to provide Medicaid recipients notice of their right to a hearing at the time required by 42 C.F.R. § 431.206 and due process.

(9) [Declare] that Defendants' final rule [failed] to continue medical services to Medicaid recipients during the hearing process as required by 42 C.F.R. § 431.230 and due process.

(10) [Declare] that Defendants' final rule [failed] to provide Medicaid recipients adequate notice of the hearings to which they are entitled by 42 C.F.R. §§ 431.206 and 431.210 and due process.

(11) [Declare] that Defendants' final rule [imposed] copayments on recipients of Room and Board Assistance or Assistance to Residents in County Homes in violation of I.C. § 4–22–2–5.3.

(12) Permanently [enjoin] Defendants from implementing or enforcing copayments in the manner found violative of federal law, state statute, and due process in (2) through (11) above.

(13) Permanently [enjoin] Defendants from implementing or enforcing Medicaid co-payments without this Court's approval of a revised final rule.

In response, the defendants submitted a proposal of revised regulations, a review of the proceedings, a review of interim changes in the law, and comments on each of the above paragraphs, concluding with a request that the court approve the amended proposed rule and dissolve the preliminary injunction of August 7, 1981. On April 14, 1983, plaintiffs notified the court that counsel for plaintiffs and defendants had agreed to resolve as many issues as possible by negotiation. On December 26, 1984, the court held a second pretrial conference. Attorney Wendell Walsh, one of the attorneys claiming fees herein, entered his appearance at this time, submitting an eleven-page memorandum on April 1, 1985. In this document Mr. Walsh reviewed those issues which had been successfully resolved and those remaining to be resolved, again asking that the class be certified, and that summary judgment be granted to the plaintiffs by declaring that the proposed regulations would continue to violate certain Federal Regulations as well as due process, by permanently enjoining implementation of any plan without court approval, and by granting any and all other just and proper relief. On the 18th of June, 1985, Attorney Walsh's appearance was withdrawn and Attorney Friedman appeared for the plaintiffs.

In response to the April 1st memorandum of Mr. Walsh, the defendants addressed five issues which the plaintiffs had specified as unresolved, submitting another revised set of regulations and form of notice, and praying for approval and dissolution of the preliminary injunction. In a six-page memorandum, Attorney Friedman again addressed the five unresolved issues and repeated the plaintiffs' requests that had been stated in the earlier memorandum. At the same time Ms. Friedman requested oral argument on plaintiffs' motion for summary judgment. The court set a hearing for March 6, 1986, ordering that the parties be ready to show an effort to resolve differences and to demonstrate that substantial dispute existed with respect to any remaining issues.

On March 3, 1986, the defendants filed a fourth amended set of regulations and revised form of notice, as an attempt to meet the most recent objections of the plaintiffs, and as a basis for further negotiations prior to the hearing. Attorneys Friedman and Guyton attended the March 6th hearing as the plaintiffs' counsel. On March 17, 1986, Attorney Friedman filed a response to the defendants' fourth amended regulations and form of notice, essentially restating the same position and attaching a sample notification to recipients.

In May of 1986, the plaintiffs' attorneys filed their fee petition and the supportive materials that are now before the court. On November 4, 1986, the court ordered that the defendants' proposed regulations be approved, indicating that all issues on the merits of the case had been resolved with the exception of the posting of notification of the right to appeal copayments. The court found that under the plain language of the regulations, posting was not required. Pursuant to the court's instruction, the defendants' objections to fees were filed on November 25th and the matter became ripe for determination.

Under 42 U.S.C. § 1988, in any action to enforce a provision of 42 U.S.C. § 1983, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit", *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278, 279 (CA 1 1978). Essentially the defendants do not dispute that the plaintiffs are entitled to fees in this case. They allege, however, first, that fees should be reduced for failure to exercise proper billing judgment. Secondly, the defendants

contend that the fees should be further reduced due to the plaintiffs' limited success.

Recently the Court of Appeals for the Seventh Circuit emphasized that district courts, when confronted with the task of computing fee awards should carefully follow the procedural directives set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), first eliminating all hours not reasonably expended or inadequately explained, then considering adjustment according to the results obtained, *Spanish Action Committee of Chicago v. City of Chicago v. City of Chicago*, 811 F.2d 1129, 1137 (7th Cir.1987). For this reason the court will first address the issue of fee computation.

### I.

Under *Hensley*, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate", *Hensley*, 461 U.S. 424, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). The calculation of this figure has been equated to the first step of a method called "the lodestar approach", *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, — U.S. —, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439 (1986). The purpose of the calculation is to provide an objective basis for an initial estimate of the value of services, *Hensley*, 461 U.S. 424, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). Where evidence supporting the hours worked and the rates claimed is inadequately documented, the district court may reduce accordingly, excluding from the initial calculation any hours that were not "reasonably expended", S.Rep. No. 94–1011, p. 6 (1976), *Hensley*, 461 U.S. 424, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

In approaching the initial calculation, or the lodestar figure, the law is clear that a reasonable fee under § 1983 is based upon the prevailing market rates as opposed to the actual cost of the services, regardless of whether representation is by private or nonprofit counsel, *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 1545, 79 L.Ed.2d 891 (1984). The court is given broad authority in determining what are reasonable fees in a civil rights action, *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), *Hibma v. Odegaard*, 769 F.2d 1147 (7th Cir.1985). The discretion given the district court is broad, both as to reasonable rate and reasonable number of hours, *Berberena v. Coler*, 753 F.2d 629 (7th Cir.1985). When an applicant has carried the burden of showing that a claimed rate and number of hours is reasonable, the resulting product is presumed to be a reasonable fee; but excessive, redundant or otherwise unnecessary hours will be omitted, *Tomazzoli v. Sheedy*, 804 F.2d 93 (7th Cir.1986).

Plaintiffs' attorneys originally requested $12,769 in fees for "at least" 321.5 hours of services by seven attorneys, all of whom provided their services through the Legal Services Program of Northern Indiana, Inc. Four of the seven attorneys filed documentation of their time at a total of 91.7 hours and a billing of $5,763. Attorney Bodensteiner, who documented services from July 27, 1981 to April 24, 1986, billed 26.4 hours at $95 per hour. Attorney Walsh, who documented his services as beginning on December 12, 1984, and ending on June 6, 1985, billed for 24.9 hours at $50 per hour. Attorney Friedman indicated that her services began June 6, 1985, and continued to April 24, 1986 for a total of 37.2 hours at $50 per hour. Attorney Guyton billed for three hours of work at $50 per hour on March 5th and 6th of 1986. The remaining 229.8 hours were undocumented.

In a letter dated November 7, 1986, addressed to the court and filed November 13, 1986, Attorney Friedman explained that the three attorneys who had worked on the case earlier had moved to other positions, and that their timesheets and records were inadvertently destroyed. The defendants have argued that no evidence of the additional hours is before the court and that the fee award should be made without consideration of the undocumented time. The memorandum of the plaintiffs' counsel stated generally that 321.5 hours was a reasonable expenditure of time considering the extent of briefing, discovery, trial preparation and negotiations, but appeared to

concede the issue, having requested that the court make its decision and award of attorney fees on the affidavits submitted by four of the attorneys. Furthermore, no argument nor citation of authority relative to this issue has been presented. Therefore, the court will directly consider only the billings of Attorneys Bodensteiner, Walsh, Friedman, and Guyton.

Attorney Bodensteiner documented the following hours as attributable to his services as plaintiffs' counsel:

| Date | Activity | Time |
|------|----------|------|
| 7–27–81 | Research relating to co-payment issues | 1.5 |
| 7–28–81 | Preparation of pleadings; T/Cs to Mary re DPW action | 2.5 |
| 7–29–81 | Preparation of pleadings; file in Hammond; research | 4.3 |
| 7–30–81 | Research; preparation of Amended Complaint | 1.3 |
| 7–31–81 | Conference of attorneys re appeal | .4 |
| 8–11–81 | Review amended pleadings; conference with Greg re preliminary injunction and notice | .5 |
| 8–12–81 | Review preliminary injunction | .2 |
| 8–13–81 | Conference with Greg re notice and motion | .2 |
| 8–14–81 | Conference with Greg re motion for notice | .2 |
| 9–17–81 | Conference with Lou re state regulations and hearing | .3 |
| 11–11–81 | T/Cs with Greg and Lou re state's proposal | .5 |
| 1–15–82 | Conference with Greg re hearing on Thursday | .7 |
| 1–20–82 | Conference with Greg and Lou in preparation for hearing on Thursday | 1.2 |
| 1–21–82 | Conference with Greg re *Smith* decision of Seventh Circuit | .5 |
| 1–22–82 | Conference with Greg to prepare for hearing and re memo | .4 |
| 1–25–82 | Preparation of Memorandum | .3 |

| Date | Activity | Time |
|------|----------|------|
| 2–24–82 | Review defendants' Reply; discuss with Greg | .4 |
| 2–26–82 | Preparation of amendment to complaint to add claims | .4 |
| 2–27–82 | Research re Section 209(b)(1) | .5 |
| 6–25–82 | Research | .7 |
| 6–28–82 | Research and preparation of discovery | 1.7 |
| 10–11–82 | Review defendants' Answers to Interrogatories | .2 |
| 10–12–82 | Conference with Greg re responses to discovery; research new federal law re co-payments | .7 |
| 4–4–82 | Preparation of response to defendants' Reply to Summary Judgment | .3 |
| 5–5–82 | Review notice; conference with Greg re it | .8 |
| 10–29–84 | Review file; conference with Wendell re pretrial conference | .8 |
| 8–6–85 | Review memos re remaining issues; conference with Greta | .8 |
| 2–18–86 | Conference of attorneys re status | .4 |
| 2–25–86 | Conference call with A.G. re status | .3 |
| 3–4–86 | Review defendants' proposal; conference call re it | .6 |
| 3–5–86 | Conference with Greta re defendants' proposal | .3 |
| 4–23–86 | Preparation of attorney fee petition | 1.0 |
| 4–24–86 | Preparation of attorney fee petition; T/C with Greta | 1.5 |
| | TOTAL | 26.4 |

By means of a Declaration in Support of Motion for Attorney Fees, Mr. Bodensteiner indicated that he had specifically practiced civil rights and poverty law since 1968 and had conducted continuing legal education programs in the same areas. He stated that in this case, supervision of less experienced staff attorneys necessitated telephone conferences, since his office was located elsewhere. He emphasized that

any fees recovered would be used in accordance with the general guidelines, objectives, and functions of the legal services program, claiming an hourly charge of $95.

■ Having considered the defendants' argument to the contrary, the court finds $95 to be a reasonably hourly rate for Mr. Bodensteiner's services in a case of this type within the given time frame and on the basis of his experience. However, upon examination of his time expenditure, the court finds certain items which are inadequately documented. With respect to conferences, at a minimum, the subject matter and parties should be identified. Similarly, research time should be identified as to its purpose. To facilitate the court's review, where activities are grouped, time should be appropriately apportioned. Otherwise, the court is left with the choice of estimating a portion of the time for a particular activity, or excluding the entire entry. In the interest of justice, the court will opt for the second approach, emphasizing that more detailed documentation would be wise and appropriate in the future.

An example of the allocation problem is to be found in the entry of July 29, 1981. Research time is improperly documented; moreover, "file in Hammond" without further explanation is insufficient and questionable in terms of both billing judgment and the clerical nature of the activity. For the foregoing reasons, the court will disallow 2 of the 4.3 hours claimed. Research time of .7 hours for June 25, 1982 will also be excluded as insufficiently documented. Where research or conferences are reasonably linked with the activity with which they are grouped, the court will allow the time, again emphasizing that documentation should be more detailed.

■ The defendants have argued that the conference time with "Greg" and "Lou" should be disallowed since the resulting benefits are not documented. The court is not persuaded by this argument. The record indicates that Mr. Bodensteiner provided direction for the work of the earlier attorneys, whose efforts apparently were productive, as is indicated by approximately five hours of court hearings and roughly 125 pages of pleadings, exhibits, affidavits, motions and memoranda. Although the court has excluded the work of the earlier attorneys for lack of documentation, it will not additionally assume that Mr. Bodensteiner's conference calls were without purpose or effect. Since the earlier time was disallowed, the conferences were not duplication of effort. The court therefore excludes a total of 2.7 hours from the time claimed by Attorney Bodensteiner, for a total fee award of 23.7 hours at $95 per hour or $2251.50.

Attorney Walsh stated by affidavit that he was employed with Legal Services of Northern Indiana until June 14, 1985 and served as co-counsel in this case, claiming a reasonable charge of $50 per hour, and documenting his time as follows:

| DATES | DESCRIPTION | HOURS |
|---|---|---|
| 12/7/84 | Letters to opposing counsel regarding pre-trial conference | .8 |
| 12/11/84 | Telephone call from attorney Shaw regarding status of case | .4 |
| 12/11/84 | Telephone call from attorney Hamil regarding status of case | .3 |
| 12/14/84 | Telephone conference regarding pretrial conference | .4 |
| 12/14/84 | Memorandum to file regarding pretrial conference | .2 |
| 12/23/84 | Preparation for pre-trial hearing | 2.0 |
| 12/25/84 | Preparation for pre-trial hearing | 2.5 |
| 12/26/84 | Attendance at pre-trial hearing in Lafayette, Indiana | 7.5 |
| 3/29/85 | Begin work on Plaintiff's Supplemental Memorandum | .8 |
| 3/30/85 | Continue work on Plaintiff's Supplemental Memorandum | 3.0 |
| 3/31/85 | Conclude work on Plaintiff's Supplemental Memorandum, arrange for copying and filing of same | 6.0 |

| DATES | DESCRIPTION | HOURS |
|---|---|---|
| 6/6/85 | Discussion with Attorney Friedman concerning transfer of responsibility for file to her and a general discussion of issues involved in the case | 1.0 |
| Total Hours | | 24.9 |

■ The court finds an hourly billing of $50.00 to be reasonable, but will eliminate the .4 hours logged on December 14, 1984 for inadequate documentation. One hour of the time claimed for March 31, 1985 will be excluded as an allocation of time which would seem to be clerical in nature and attributable to overstaffing or improper billing judgment. The court finds a reasonable fee for the services of Mr. Walsh to be 23.5 hours at the rate of $50 per hour or $1175.00.

■ Attorney Guyton submitted documentation of the following services:

| Date | Activity | Time |
|---|---|---|
| 3-5-86 | Telephone call from Greta Friedman regarding March 6, 1986 hearing | .3 |
| 3-6-86 | Review Defendant's Fourth Amended Set of Regulations and relevant federal regulations | .6 |
| | Discuss status with Greta in preparation for hearing; discuss plaintiff's final response and motion for attorney fees | 2.1 |
| | TOTAL: | 3.0 |

Ms. Guyton also filed an affidavit stating that she had practiced law in areas related to this case since 1976, and that a reasonable fee for her services is $50 per hour. The defendants oppose these hours on the assertion that they are attributable to overstaffing, and should be excluded in the exercise of billing judgment. To an extent the court agrees that Attorney Guyton's two-day involvement at this point in the case appears unwarranted. Attorney Friedman's billing indicated that she had already benefited from the input of several other attorneys. For this reason the court will exclude a portion of the time claimed, allowing for the fact that a second attorney might have been needed at the hearing, in Mr. Bodensteiner's absence. The court finds the hourly rate of $50 to be reasonable, and will allow 2.0 of the hours claimed for an award of $100.00.

Attorney Friedman has filed an affidavit stating that she became employed by the Legal Services Program of Northern Indiana, Inc. on May 31, 1985 and served as co-counsel in this litigation. She documented the following services as her part in the litigation:

| DATES | DESCRIPTION | HOURS |
|---|---|---|
| 6/6/85 | Discussion with Wendell Walsh concerning transfer of case review file and new revised regs. and notice sent by Defendant | 1.0 |
| 7/18/85 | Revised regs. & notice sent by Defendant | 3.0 |
| 7/19/85 | Research issues unresolved | 1.4 |
| 7/22/85 | Research issues unresolved | 1.3 |
| 7/30/85 | Telephone call to Ivan Bodensteiner regarding status of case | .2 |
| 8/2/85 | Telephone call to Ivan Bodensteiner regarding status of case | .3 |
| 8/6/85 | Preparation of our response to Defendant's notice | .9 |
| 8/7/85 | Telephone call from Ivan Bodensteiner regarding status of case | .4 |
| 11/19/85 | Telephone call to Gary Shaw regarding case | .3 |
| 11/19/85 | Drafting our response to Defendant's revised notice and regs. | 5.2 |
| 11/21/85 | Drafting of our response to Defendant's revised notice and regs. | 1.3 |
| 12/2/85 | Preparation for filing response | .5 |
| 2/20/86 | Preparation for hearing on March 6 | 4.3 |
| 2/25/86 | Preparation for hearing on March 6 | .9 |
| 3/3/86 | Preparation for hearing on March 6 | .3 |

| DATES | DESCRIPTION | HOURS |
|---|---|---|
| 3/4/86 | Conference call with Ivan Bodensteiner and Gary Shaw regarding negotiating unresolved issues | .2 |
| 3/4/86 | Memo to file on conference call | .3 |
| 3/5/86 | Preparation of file for hearing on March 6 | .3 |
| 3/5/86 | Telephone call to Wendell Walsh regarding status of case | .2 |
| 3/5/86 | Telephone call from Ivan Bodensteiner regarding hearing on 3/6/86 and his inability to attend | .3 |
| 3/5/86 | Telephone call to Leslie Guyton regarding March 6, hearing | .3 |
| 3/5/86 | Final preparation for hearing on March 6 | 1.3 |
| 3/6/86 | Hearing on unresolved issues in case | .5 |
| 3/6/86 | Preparation before | 1.2 |
| 3/6/86 | Travel time | 3.5 |
| 3/6/86 | Memo to file regarding hearing | .4 |
| 3/7/86 | Letter to Wendell Walsh regarding outcome of hearing | .2 |
| 3/7/86 | Letter to Ivan Bodensteiner regarding outcome of hearing | .2 |
| 3/7/86 | Letter to Greg French regarding status of case | .2 |
| 3/7/86 | Organizing attorney hours put in on case to prepare Petition for Attorneys Fees | 1.0 |
| 3/11/86 | Draft of Petitioner's Response and Objection to Defendant's fourth revised notice and regulations | 1.6 |
| 3/13/86 | Finish our response to Defendant's fourth revised notice and regs. on mailing | .5 |
| 3/17/86 | Telephone call to Clerk to verify pleadings arrived on time | .1 |

| DATES | DESCRIPTION | HOURS |
|---|---|---|
| 4/3/86 | Telephone call to Kate Martin regarding her hours worked on this case | .3 |
| 4/4/86 | Totalling attorneys fees for Greg French | .4 |
| 4/12/86 | Preparation of Motion for Order awarding attorneys fees and costs | 3.0 |
| 4/13/86 | Telephone call to Greg French regarding timesheets | .4 |
| 4/13/86 | Telephone call to Kate Martin regarding timesheets | .3 |
| 4/24/86 | Motion for Continuance | 1.0 |
| | TOTAL HOURS | 37.2 |

█ The involvement of Attorney Friedman spanned a little over ten months and produced essentially a six-page response to the defendants' revised regulation and notification, a one-page motion for oral argument of a summary judgment motion, court time of less than a half hour, another six-page response to a fourth revision by defendants, coordination of the fee affidavits, and submission of the fee petition accompanied by a nine-page supportive memorandum. The bulk of Attorney Friedman's memoranda duplicates or restates that which had been presented earlier to the court. Although this work may have served the purpose of producing additional revisions simply by virtue of being restated and filed, the overall product did not add substantially to earlier memoranda. For this reason the time spent on responsive memoranda is excessive and will be reduced by 3 hours.

█ The record indicates that Attorney Friedman attended a pretrial hearing on March 6, 1986, which lasted from 2:39 P.M. to 2:50 P.M. Ms. Friedman documented over twelve hours related to that hearing, inclusive of preparation, attorney conferences, the hearing itself, travel time, and reporting of the outcome. The court finds convincing the defendants' objection that

an expenditure of over eight hours in preparation for this hearing was excessive. If unusual circumstances existed which required this preparation, such circumstances are not apparent from the record and should have been documented. Therefore the court will eliminate 3.5 hours of the time documented as preparation for the March 6th hearing.

▉ Additionally, the hour claimed on April 24, 1986 and documented as "Motion for Continuance" appears excessive on its face. The court can find no such motion in the record to help determine if such a time expenditure was warranted. Therefore, the hour will be excluded for a total reduction of 7.5 hours from Ms. Friedman's documentation.

In summary, the following fees will be included in the initial calculation:

| | | |
|---|---|---|
| Attorney Bodensteiner | $95 × 23.7 = | $2251.50 |
| Attorney Walsh | $50 × 23.5 = | $1175.00 |
| Attorney Guyton | $50 × 2.0 = | $ 100.00 |
| Attorney Friedman | $50 × 29.7 = | $1485.00 |
| TOTAL | 78.9 | $5011.50 |

## II.

▉ Having addressed the matter of the initial fee calculation, the court now turns to the defendants' contention that the plaintiffs' fee award should be additionally reduced due to their limited success.

Referring to *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Court of Appeals for the Seventh Circuit discussed two types of fee cases in *Spanish Action Committee of Chicago v. City of Chicago,* 811 F.2d 1129 (7th Cir.1987). The first involves distinctly different claims based on different facts and legal theories. The second is the type which states claims involving a common core of facts or which are based on related legal theories. In the second type of case, the time spent on claims that are not ultimately successful will not automatically be excluded. The focus of inquiry has been seen to shift "from successful-unsuccessful to related-unrelated", *Lenard v. Argento,* 808 F.2d 1242 (7th Cir.1987).

In this case the plaintiffs stated ten causes of action all of which the court considers to be related to the purpose of enjoining implementation of Public Law 141. Although the plaintiffs did not prevail on all claims nor on becoming certified as a class, they did obtain a preliminary injunction which led to negotiations which, in turn resulted in significant changes in the areas of hearing rights, the imposition of copayment on certain recipients, and the exemption of particular services from the copayment system.

Admittedly the determination of a reasonable fee does not necessarily end with the calculation of hours times rates. Consideration of what has been termed "the Johnson factors" may lead the court to adjust a fee upward or downward. These factors include:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of this case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley v. Eckerhart,* 103 S.Ct. at 1937 n. 3 (citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974).

Supreme Court decisions subsequent to *Hensley* have further refined the appropriate application of adjustments on the basis of these factors. As a result of these refinements, upward adjustments remain possible but only if such an adjustment has not already been made in one of the factors computed into the lodestar amount. See *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). In *City of Riverside v. Rivera,* — U.S. —, 106

S.Ct. 2686, 91 L.Ed.2d 466 (1986), the Supreme Court reiterated that the figure commonly referred to as the "lodestar" is presumed to be the reasonable fee contemplated by § 1988, *id.* at 5.

Adjustment of the lodestar was further clarified in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* — U.S. ——, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), where the Supreme Court reversed an enhancement for superior quality. The case provided a reflection upon the negative aspects of using the Johnson factors, and emphasized the strong presumption that the lodestar figure represents a reasonable fee, *id.,* 106 S.Ct. at 3098. Referring largely to *Blum,* the Court reiterated that the figure resulting from the initial calculation is more than a mere "rough guess" or initial approximation, *id.* The Court further reflected that *Blum* had limited the factors to be considered in making the adjustment, having stated that among several other of the Johnson factors, the results obtained from the litigation are "presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award", *Pennsylvania v. Delaware Valley Citizens' Council,* — U.S. ——, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439 (1986). Although the Court's comments are addressed to an upward adjustment, and downward adjustments might conceivably be less rarely and exceptionally supportable, the general position of the law would seem to be clear that lodestar adjustments on the basis of the Johnson factors remains applicable, but only over a strong presumption of reasonableness in the initial calculation, and only to the extent that the factors have not been reflected in the computation.

The Court of Appeals for the Seventh Circuit recently upheld a reduction of fees on the basis of limited success in *Spanish Action Committee of Chicago v. City of Chicago,* 811 F.2d 1129 (7th Cir.1987). See also *Bovey v. City of Lafayette,* 638 F.Supp. 640 (N.D.Ind.1986). In *Spanish Action,* the court refused to disturb the district court's decision where the district court had provided a detailed explanation for the reduction, which was partially based on the plaintiffs' having lost on the issue of punitive damages, originally claimed in the amount of $5,000,000.00. This court finds that this case is distinguishable from both *Spanish Action* and *Bovey,* and that the facts here in do not support an additional reduction for limited success.

The fees originally claimed have been reduced outright from $12,769 to $5,763 on the basis of lost documentation of 229.8 hours. This amount was further reduced on the bases of inadequate documentation and hours not reasonably expended to result in a combined award of $5,011.50 for 78.9 total hours of service by four attorneys. The court considers the claims of the plaintiffs to have involved a common core of facts and to have been based on related legal theories. Moreover, the court considers the overall success of the lawsuit to have justified the above hours and fee award. See *Lenard,* 808 F.2d 1242 (7th Cir.1987). Therefore, the court finds that an additional downward adjustment on the basis of limited success or any other of the Johnson factors is unwarranted, and awards the plaintiffs reasonable attorney fees in this case in the sum of $5,011.50. SO ORDERED.